808 F.2d 1023
 PACE RESOURCES, INC., Appellant,
v.
SHREWSBURY TOWNSHIP, O'Keefe, John J. Nace, Clarence E.
Dutton, John D. Malone, Gilbert G. Solomon,
William J. Nielsen, Carl Grim, Richard
M. McKay, Ronald and Spangler, Larry C.
 No. 86-5210.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 17, 1986.
Decided Jan. 12, 1987.
 
 Donald L. Reihart (argued), Laucks & Monroe, York, Pa., for appellant.
 Gilbert G. Malone (argued), Malone & Neubaum, York, Pa., for appellees.
 Before ADAMS* and STAPLETON, Circuit Judges and COWEN, District Judge.**
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 In this civil rights action, Pace Resources, Inc. ("Pace") seeks to recover damages for the alleged loss of use of a parcel of real estate owned by it in Shrewsbury Township ("the Township") during a period in which it successfully challenged certain land use restrictions of the Township in a state proceeding. Pace alleges that the Township's restrictions on land use have violated the taking clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment and that the Township, accordingly, should be held accountable for the economic consequences of the delay occasioned by the Township's promulgation and enforcement of these restrictions. The district court granted the defendants' motion to dismiss. We affirm.
 
 I.
 
 2
 Pace purchased a 145.61 acre tract of land in Shrewsbury Township in May of 1965 for $75,000. Since that time, Pace has attempted to develop an industrial park on this land. In 1973, the Township's Board of Supervisors approved a preliminary development plan for the entire tract and a final plan for six of the 47 proposed lots. These six lots sold promptly and the buyers have erected buildings on four of the six.
 
 
 3
 In November, 1976, the Township adopted a zoning ordinance and comprehensive plan for land use. The Township zoned all of Pace's land for industrial use. Shortly thereafter, Pace's final plans for an additional six lots received approval. Two years later, however, Township residents raised concerns about possible harmful effects of continued industrial development in their community. The Shrewsbury Township Planning Commission and the Board of Supervisors agreed in November, 1978, to reevaluate the zoning ordinance.
 
 
 4
 Pace submitted a final development plan for its remaining lots on December 5, 1978. On January 9, 1979, the Board of Supervisors and Township planners reviewed the zoning ordinance and devised proposed amendments. The Township rejected Pace's 1978 final development plan on either January 12 or February 7, 1979, relying on defects in the plan under the 1976 zoning ordinance. In particular, the Township found the plan deficient because it did not survive scrutiny under Section 402 of the ordinance, which allowed approval of on-lot water supply systems only where "the water supply yield is adequate for the type of development proposed" and "the installation of such systems will not endanger or decrease ground water of properties adjacent to the land development." App. at 33. Pace resubmitted a modified version of its plan at a March 7, 1979, joint meeting of the Board of Supervisors and the Township Planning Commission. The plan was again rejected.
 
 
 5
 On March 12, 1979, the Board of Supervisors adopted the proposed amendments to the zoning ordinance. The amendments rezoned 128 acres from industrial to agricultural and other designations, including 37 acres owned by Pace that were rezoned agricultural. The amendments also established a mandatory special exception procedure for industrial development of land in an industrial park. The amended ordinance requires an applicant for a special exception to show compliance with certain performance standards, one of which is the same adequate water supply requirement set out in the first ordinance at Section 402. The zoning ordinance amendments adopted on March 12, 1979, included numerous other changes in the original ordinance.
 
 
 6
 On August 6, 1979, Pace initiated a proceeding before the Township's Zoning Hearing Board, contesting rejection of its final plan and challenging the validity of certain provisions of the amended ordinance. The Board's rejection of Pace's contentions led to an appeal and ultimately resulted in a May 23, 1985, 89 Pa.Cmwlth. 468, 492 A.2d 818, Commonwealth Court decision that found the rezoning of Pace's 37 acres to be illegal spot zoning. The court further found that Section 402's adequate water supply requirement (as well as the similar requirement in the amended ordinance) was too vague to meet the requirements of Pennsylvania's Municipalities Planning Code.
 
 
 7
 Upon termination of the state court proceedings, the matter was remanded to the Township Board of Supervisors with a direction that it grant or deny approval of the plans submitted by Pace in December of 1978 based solely on the ordinance in effect at that time, with Section 402 deleted. App. at 37, 108, 112. Thus, Pace, since the close of the state court proceedings, has had the right to have its 1978 plan processed under the law as it existed prior to the actions of which it here complains. Significantly, Pace's amended complaint does not allege any wrongful denial of approval following the remand to the Board of Supervisors. In addition to the right to seek approval under the old law, Pace has had the right since May 23, 1985, to develop all of its land for industrial use pursuant to a new plan, submitted for approval under the provisions of the new ordinance, disregarding Section 402 and the rezoning of the 37 acres.
 
 
 8
 In this federal action, Pace seeks monetary and injunctive relief based on allegations that Township officials, by rejecting Pace's plans and amending the zoning ordinance, have effected a taking of Pace's property and have deprived Pace of property without due process of law. The district court dismissed the suit for failure to state a claim upon which relief could be granted. To evaluate properly Pace's claims for relief under the Constitution and 42 U.S.C. Sec. 1983, it is necessary first to examine carefully the allegations of Pace's complaint and to review the state court decisions.
 
 A. Pace's Allegations
 
 9
 The Pace amended complaint states that "after January 9, 1979, and up to the present, the Defendants adopted the custom and policy of preventing the lawful and reasonable use of Plaintiff's land in Shrewsbury Township." App. at 9. Pace further alleges that "the Defendants imposed administrative burdens, drafted and enacted and enforced discriminatory, unreasonable and arbitrary regulations that inhibit the industrial development in the Township" and that "Defendants specifically conspired to use their official governmental positions and offices to cripple and destroy Plaintiff's industrial development." App. at 9-10. In addition, Pace states that it "has been denied the economically viable use of its property in violation of the just compensation clause of the Fifth Amendment." App. at 11.
 
 
 10
 These characterizations of the activities of the Township's officials need to be considered in context. First, the allegations are conclusory. The complaint contains no factual allegations supporting some of the sweeping conclusions that otherwise might be legally relevant. Thus, for example, while the complaint refers to "discrimination", it fails to identify any similarly situated property that was treated differently. As we have held on a number of occasions, such conclusory allegations cannot be accepted at face value in this area of the law. See, e.g., Rotolo v. Borough of Charleroi, 532 F.2d 920 (3d Cir.1976); Boykins v. Ambridge Area School Dist., 621 F.2d 75 (3d Cir.1980). The economic drain of civil rights litigation on public resources is simply too great to permit cases to go forward without a more substantial indication that a constitutional violation may have occurred.
 
 
 11
 Second, the strong language concerning an intent to stop Pace's development is altogether consistent with legitimate actions of a township's legislative body. The complaint in essence alleges that the Township acted to slow industrial development, with knowledge that the value of certain properties, including land owned by Pace, would diminish as a result. The complaint itself states that the Township responded to public concern by taking steps "to prevent change, keep other citizens out of the township, to minimize township services and expenditures and keep taxes down." App. at 9. Thus, it is not alleged that the Township's actions were undertaken out of animosity toward Pace or for other reasons unrelated to land use planning. As Pace candidly conceded at oral argument, this conduct would have occurred regardless of who owned Pace's property so long as they were planning to use the land in the same way. Moreover, there is no allegation that the regulators acted for personal financial gain.[1] Accordingly, this case is far removed from the situation that this Court faced in Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743 (3d Cir.1982), cert. denied, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982) (allegations that public officials conspired to put plaintiff out of business for private reasons applicable only to him state civil rights claim under due process clause).
 
 
 12
 Finally, Pace's broad, conclusory allegations must be read together with the complaint's statement that Pace's 37 acres retained a value of $52,000 after the Township zoned them agricultural. This substantial retained value demonstrates that Pace seeks relief because it has been denied the most desirable use of this land, not because it has been denied all use of its property.
 
 B. The Pennsylvania Litigation
 
 13
 The Zoning Hearing Board dismissed Pace's claims on December 22, 1980. Pace then appealed to the Court of Common Pleas of York County. In its opinion that court concluded inter alia that the rezoning did not constitute special legislation, spot zoning, or a taking. The court stated:
 
 
 14
 Pace has failed to meet its heavy burden of establishing [that] the amendatory ordinances were specifically directed against its property or that they bear no relationship to the general welfare of the community. Therefore, we do not find that the decision of the Zoning Hearing Board of Shrewsbury Township was arbitrary, capricious or an abuse of discretion on the issue of "special legislation."
 
 
 15
 App. at 121-22. With respect to Pace's spot zoning argument, the court found as follows:
 
 
 16
 To prove the contention that the 1979 amendments constitute "spot zoning," Pace must again overcome the presumption of validity accorded the 1979 amendments and clearly establish the provisions of the amendment are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare....
 
 
 17
 * * *
 
 
 18
 Taken separately or collectively, we do not find Pace's arguments supporting its "spot" zoning challenge so compelling and beyond debate to enable us to invalidate the rezoning on this ground.
 
 
 19
 We conclude that Pace has failed to prove the different treatment accorded its 37 acre tract is "unjustifiable." Therefore, we hold that the Zoning Hearing Board did not err or abuse its discretion when it concluded there was a reasonable basis for the rezoning.
 
 
 20
 App. at 135, 140. Addressing the claim of a taking without just compensation, the court concluded:
 
 
 21
 Suffice it to say that with respect to this issue, a general principle of zoning law is that all zoning has some economic impact on the land affected by the zoning. See Swade v. Springfield Township, Zoning Board of Adjustment, 392 Pa. 269, 140 A.2d 597 (1958). Even designated as agricultural land, Pace's land retains some value. Therefore, we find that there has been no taking of Pace's land without just compensation in derogation of the Fifth and Fourteenth Amendments to the United States Constitution.
 
 
 22
 App. at 140-41.
 
 
 23
 The only one of Pace's claims accepted by the York County court concerned Section 402 of the first ordinance and the similar water supply standard of the new special exception procedure. Finding the special procedure on the whole "valid and constitutional," App. at 129, the court nevertheless concluded that the water supply language of both the new and old ordinances "provide[s] no standard on which a landowner-developer can rely to comply with the law." App. at 132-33. The court invalidated the water supply standard as "unconstitutionally vague." App. at 134.
 
 
 24
 Both the Township and Pace appealed to the Commonwealth Court of Pennsylvania. That court affirmed the finding that the water supply standard was void for vagueness but relied on statutory rather than constitutional grounds. In addition, the court reversed the Court of Common Pleas with respect to the spot zoning challenge. Reasoning that the Township had the burden of proof rather than Pace, the court concluded:
 
 
 25
 In the instant case, the size of the rezoned area, 37 acres, is considerably larger than other areas found by our courts to be the object of spot zoning. See Glorioso Appeal, 413 Pa. 194, 196 A.2d 668 (1964); French v. Zoning Board of Adjustment, 408 Pa. 479, 184 A.2d 791 (1962). However, even relatively large tracts of land can in fact be a spot zone. In Commercial Properties, Inc. v. Peternel, 418, Pa. 304, 311, 211 A.2d 514, 519 (1965), our Supreme Court stated that: "It makes no difference whether it is a one-quarter acre lot or a 50 acre industrial complex which is the subject of the rezoning. If it is aimed at preventing a theretofore legal use of an integrated unit owned by one common interest, the action cannot be supported as valid rezoning." Similarly, in Appeal v. Benech, 28 Pa. Commonwealth Ct. 415, 368 A.2d 828 (1977), we held that a rezoned parcel of 80 acres was a spot zone.
 
 
 26
 The Township, in this case, has failed to show any substantial relationship between the rezoning of 37 acres of Pace's land and the public health, safety, morals, or welfare. The rezoning of Pace's land to "agricultural" was accomplished by the Board of Supervisors in only an hour from the introduction of the Ordinance to its final passage. This differs sharply from the prior zoning scheme which was the product of months of planning, studies, and meetings. In fact, the record indicates that this change was prompted by a petition from area residents requesting such a change, and that the circulator of the petition was the wife of one of the Planning Commissioners.
 
 
 27
 The stated intent of the Planning Commission and the Board of Supervisors was to preserve the rural nature and agricultural integrity of the Township. However, as a result of this rezoning and other zoning changes made, the agricultural land was actually reduced from 69.4 percent to 68.6 percent.
 
 
 28
 The rezoning of certain industrial land to agricultural, including Pace's tract is also inconsistent with the comprehensive plan. The comprehensive plan indicates that the Township planned to have a spirit of positive industrial development in designated areas. The Southern Industrial Park was situated in one of these areas. As a result of these zoning changes, which included rezoning of 37 acres of Pace's land, industrial land was reduced from 2.1 percent to 1.4 percent.
 
 
 29
 Finally, the rezoning of the 37-acre tract caused tremendous economic detriment to Pace. Pace cannot subdivide these 37 acres for residential purposes, since a Township ordinance prohibits subdivision of lots in agricultural districts if they are less than 50 acres in size. (We have recently upheld a similar ordinance in Codorus Township v. Rodgers, Pa.Commonwealth Ct. , A.2d (No. 2085 C.D.1984, filed April 30, 1985)).
 
 
 30
 Therefore, we conclude that the rezoning of Pace's 37 acres constituted arbitrary and unjustifiably discriminatory zoning.
 
 
 31
 App. at 35-37.
 
 II.
 
 32
 The United States District Court for the Middle District of Pennsylvania dismissed Pace's August 26, 1985, amended complaint. Judge Herman ruled that assuming a taking had occurred as a result of the defendants' conduct, no additional relief could be granted by the federal court. The court found a federal inverse condemnation remedy inappropriate and, because a state court had already declared the rezoning of Pace's 37 acres invalid, found injunctive relief unnecessary. With respect to Pace's due process claims, the court held that the state court's conclusion regarding the rezoning of the 37 acres constituted a binding determination that a denial of substantive due process had occurred. Nevertheless, it again found that no additional federal relief was appropriate. The court ruled that damages were not available under Section 1983 to compensate any temporary loss of use occasioned by the rezoning of Pace's land even if a substantive due process violation had occurred. Finally, because a rational basis could be found for all other actions of the Township, these other actions did not, according to the district court, violate substantive due process.
 
 
 33
 We have plenary power to examine the sufficiency of the complaint. Pace's complaint contests numerous actions by the Township: (1) the rezoning of the 37 acres, (2) enactment and use of vague water supply standards, (3) enactment of other environmental impact standards, (4) enactment of the special exception procedure, and (5) the adoption of other "unfair" but unidentified ordinances. Only two primary questions, however, are before the court.
 
 
 34
 The first question is whether the complaint adequately pleads a taking effected by the Township's rezoning and if so, whether compensation is available under the Fifth and Fourteenth Amendments. The state courts have already invalidated the rezoning, making federal injunctive relief unnecessary and inappropriate. A taking claim based on other aspects of the new ordinance (the new standards) is not yet ripe for decision, because the complaint does not allege that the Township, by invoking these standards, has made a final determination regarding use of Pace's land. The mere enactment of these provisions does not restrict Pace's land to certain uses. See Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (zoning ordinance did not on face effect a taking; particular application of the ordinance not properly before court because appellants had not applied to make improvements on property); see also MacDonald, Sommer & Frates v. Yolo County, --- U.S. ----, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). Similarly, the Township's use of Section 402 and other sections of the old ordinance to reject Pace's 1978 development plan does not constitute a possible basis for a taking claim. The Township's denial of approval in early 1979 simply rejected one proposed means of industrial development. This decision did not determine that certain uses were conclusively barred. Pace does not allege that the value of its property fell at the time of the Township's rejection of its 1978 plan. See MacDonald, Sommer & Frates v. Yolo County, 106 S.Ct. at 2567-69 (one development proposal submitted and rejected, but because still no final determination of how ordinances restricted land use, taking claim not ripe for decision).
 
 
 35
 The second question before this court is whether the complaint adequately alleges that one or several of the Township's enactments violate substantive due process and if so, whether any federal relief is available for the violation. We must consider each of the four specific allegations of irrational legislation--the rezoning, the water supply standards, the other standards, and the special exception procedure. Statements in the complaint about "other unfair ordinances," however, are so vague that they clearly cannot form the basis for a valid claim. Neither the defendants nor the court can determine the zoning ordinance sections to which these statements refer. See, e.g., Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759, 762 (5th Cir.1984) (claimant must give defendant fair notice); Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir.1984) (under Fed.R.Civ.P. 8(a)(2), pleading must give fair notice).
 
 
 36
 Based on the allegations of Pace's amended complaint, we conclude that the Township rezoning did not effect a taking of Pace's property. Accordingly, we have no occasion to consider the district court's conclusion that, assuming a taking occurred, damages for temporary loss of use are nevertheless unavailable.
 
 
 37
 We also conclude that Pace's amended complaint does not allege a violation of the due process clause. For this reason, we do not reach the issue of whether damages for temporary loss of use would be recoverable if a violation of due process had occurred.
 
 III.
 
 38
 Pace's allegations with respect to the rezoning of some of its acreage from industrial to agricultural use cannot support a taking claim under the principles of taking analysis established by prior decisions of this Court. As Pace acknowledges, the Township, pursuant to the police powers delegated to it by the State, may regulate the uses of property within its jurisdiction to promote the public good. See Penn Central Transportation Co. v. New York City, 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The initial step in any taking analysis, accordingly, is whether the challenged governmental action advances a legitimate public interest. In this step, the governmental action is entitled to a presumption that it does advance the public interest. Goldblatt v. Hempstead, 369 U.S. 590, 596, 82 S.Ct. 987, 991, 8 L.Ed.2d 130 (1962); Bibb v. Navajo Freight Lines, 359 U.S. 520, 529, 79 S.Ct. 962, 967, 3 L.Ed.2d 1003 (1959) (exercise of police power is presumed to be constitutionally valid); Salsburg v. Maryland, 346 U.S. 545, 553, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954) (the presumption of reasonableness is with the State); United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938) (exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it). As we have earlier noted, Pace objects to the rezoning ordinance because it will allegedly "prevent change, keep other citizens out of the Township, ... minimize Township services and expenditures, ... keep taxes down," and reduce the level of potential industrial development from that established by the preceding ordinance. This does not indicate that the rezoning ordinance was undertaken for a purpose other than benefiting the public interest. Indeed, these allegations confirm the contrary. Controlling the rate and character of community growth is the very objective of land use planning and Pace's property as well as the remaining properties in the Township have undoubtedly benefited from the Board's willingness to assure controlled development.[2]
 
 
 39
 Finding a public purpose does not end taking analysis, however. A legitimate exercise of police power and in particular, a general land use regulation, may nevertheless offend the Fifth and Fourteenth Amendments if its impact "denies [a landowner] the 'justice and fairness' guaranteed by" those Amendments. Agins v. Tiburon, 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980) (quoting Penn Central Transp. Co. v. New York City, 438 U.S. at 124, 98 S.Ct. at 2659). Only when there is this kind of impact does a taking occur within the meaning of the just compensation clause.
 
 
 40
 In Keystone Bituminous Coal Ass'n v. Duncan, 771 F.2d 707 (3d Cir.1985), cert. granted, --- U.S. ----, 106 S.Ct. 1456, 89 L.Ed.2d 714 (1986), this court found that although no precise formula for identifying a taking exists, there are several factors that have proven relevant: the type of governmental interference; the diminution in property value; and the extent of interference with "reasonable, distinct, investment-backed expectations." 771 F.2d at 713. Governmental action will more readily be held a taking when it accomplishes physical invasion of the property. Id. at 712. Such an invasion is not present here. Thus, the first factor militates against finding a taking.
 
 
 41
 The issue, therefore, becomes whether the complaint alleges such extensive interference with the property's use that a taking without invasion has been pled. The latter two factors discussed in Keystone, each developed under varying factual circumstances, are different ways of looking at interference with use. Id. at 713. We first address the diminution in market value factor. As we stated in Rogin v. Bensalem Township, 616 F.2d 680, 692 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), the courts will invoke the taking clause of the Fifth Amendment only when zoning regulation interferes drastically with a property's possible uses. "[U]nless application of the law destroys or severely diminishes the value of the property, the [Supreme] Court will uphold the application," even if the law prohibits a beneficial use to which certain parcels had been devoted and thus causes "substantial individualized harm." Id. at 690 (citation omitted).
 
 
 42
 Here Pace alleges generally that it "has been denied the economically viable use of its property." App. at 11. It then goes on to allege that the rezoned 37 acres had a value of $495,600 before the zoning change and a value of $52,000 once zoned agricultural. As we have earlier noted, putting these two allegations together makes it apparent that although Pace may have been denied the best use or uses of its 37 acres, it has not been deprived of all economically viable uses of this property.[3] Although there has been a substantial diminution in value, this property retains a substantial value that establishes the existence of residual economically feasible uses.[4] The Supreme Court has made it clear that general land use regulation may deprive an owner of the best use or uses of his property without compensation. Goldblatt v. Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 988, 8 L.Ed.2d 130 (1962). For this reason "the taking issue ... is resolved by focusing on the uses the regulations permit" and on the residual value of the property. Penn Central Transportation Co. v. New York City, 438 U.S. 104, 131, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978). In applying these principles, the Supreme Court has sustained land use regulations that have resulted in large reductions in value, similar to the one allegedly experienced by Pace, where the land retains significant value. See, e.g., Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (reduction in value from $800,000 to $60,000); Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75% diminution in value).
 
 
 43
 Pace also alleges that the rezoning "had the effect of prohibiting the completion of the [entire industrial park] development due to extremely high development completion costs." App. at 12. This statement refers to the development as planned by Pace before the zoning changes. Pace does not allege that alternative forms of industrial development or other profitable uses were foreclosed by the rezoning of the 37 acres. More importantly, Pace does not allege that the value of its entire tract dropped significantly as a result of the rezoning.[5] The only allegation of a drop in value refers to the 37 rezoned acres and, as we have seen, that allegation does not demonstrate that a taking has occurred.[6]
 
 
 44
 Turning to the third factor in taking analysis, interference with "reasonable, distinct, investment-backed expectations," it is important to identify the context in which this factor evolved. It can be traced back to Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), where the Supreme Court held that Pennsylvania's Kohler Act effected a taking by halting plaintiff's coal-mining. In that case the coal company had sold the surface rights to particular properties, but had reserved the right to remove the coal thereunder and had secured a waiver of all claims from subsidence damage caused by the mining. The Pennsylvania statute, enacted after the sale, prohibited mining that caused the subsidence of any house unless the owner of the coal also owned the house. This legislation made the company's mining operations unprofitable and thus essentially took away its entire investment in the reserved rights, a previously profitable investment given that the company had contracted out of liability for any damage to surface structures.
 
 
 45
 In Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court explained the concept of reasonable, distinct, investment-backed expectations that emerged from Justice Holmes' decision in Mahon. It noted that the Mahon case did not mean one could "establish a 'taking' simply by showing that [he had] been denied the ability to exploit a property interest that [he] heretofore had believed was available for development." 438 U.S. at 130, 98 S.Ct. at 2662. Nor, as we have seen, does it mean that once a property has been devoted to a particular use, the owner has a reasonable expectation of being able to continue with that use absent the payment of compensation, Goldblatt, supra; Hadacheck, supra.
 
 
 46
 In Keystone, we were confronted with a challenge to another Pennsylvania statute that dealt with the coal mining industry and the problem of subsidence. The Mahon case was distinguished and the statute upheld:
 
 
 47
 In Penn Central, the Court ... read Mahon as stating that a statute may "frustrate distinct investment-backed expectations" when it has "nearly the same effect as the complete destruction of rights [a party] had reserved from the owners of the surface land." Penn Central, 438 U.S. at 127, 98 S.Ct. at 2661. The Court thus stressed that the coal owners in Mahon had expressly contracted with individual surface owners for the waiver of any claim for damages due to subsidence. It was reasonable for them to have distinct expectations, grounded upon those waivers, to be free to mine coal without liability for damage caused to the surface owners' estates. The Kohler Act thwarted those expectations by shifting the burden contractually imposed upon the surface owners to the mine operators. In so doing the Act appeared only to affect private interests.
 
 
 48
 In the present appeal, however, the statute at issue is clearly designed to serve broad and legitimate public interests. The ownership of the support estate does not afford a mine operator a reasonable expectation to profit at the expense of the public at large, but only at the expense of the surface owner with whom it contracted.... Just as coal mining activities may be restricted when they intrude upon the interests of adjacent owners, or the holders of water rights, police power may be invoked to protect the public. Thus, a property owner's reasonable expectations as to the possible uses of his property are always circumscribed by the limitations on its use that may be imposed by the state in the public interest....
 
 
 49
 771 F.2d at 716-17.
 
 
 50
 The concept of reasonable, distinct, investment-backed expectations may, as Pace suggests, involve a recognition of the fact that a property can have value, arising from partially executed plans for development, that is unique to its owner and not reflected in its current market value. We accept this premise for present purposes. We note two limiting principles based on the foregoing case law, however. First, distinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest. Second, even where distinct, investment-backed expectations are involved, a taking through an exercise of the police power occurs only when the regulation "has nearly the same effect as the complete destruction of [the property] rights" of the owner. Keystone, supra, 771 F.2d at 716.
 
 
 51
 In this case, Pace seems to allege that it had distinct investment-backed expectations in its 37 acres because, between the preliminary approval in 1973 and July of 1979, it invested $142,000 for road construction, utility improvements, and engineering costs. While Pace does not allege how much of this development expense is attributable to the lots which received final approval in accordance with its original expectation or how much could have been recouped in the development of the 108.61 acres which remained zoned for industrial development, we may assume for present purposes that some of these funds were invested in order to develop the 37 acres for industrial uses. This assumption, however, does not aid Pace in its argument that the rezoning constituted a taking. Because Pace's expectations, in order to be reasonable, were necessarily subject to the power of the state to reasonably regulate in the public interest, Pace could have had no reasonable expectation in the Spring of 1979 that it would be entitled to utilize its 37 acres in accordance with its original plan.
 
 
 52
 Throughout the time Pace was developing its plans, Pennsylvania law recognized Pace's legitimate interest in being able to execute its project and recoup its development cost free of any changes in the land use planning rules that would frustrate Pace's original expectations. At the same time, Pennsylvania law also recognized the legitimate interest of municipalities in being able to modify land use planning rules when they perceived the need for change. In exercising its police power, Pennsylvania struck the balance between the expectations of landowners like Pace and the expectations of municipalities like the Township by providing landowners a three-year period to realize their expectations sheltered from land use planning changes and by authorizing the municipalities to make changes applicable to projects in development after their third anniversary. Thus, under the Pennsylvania Municipal Planning Code, 53 P.S. Secs. 10101, et seq., during the period from 1968 to 1982, a landowner who had received a preliminary approval was entitled to have his final plan processed under the law as it existed at the time of preliminary approval so long as less than three years had passed. After three years, however, the landowner's project became subject to any restrictions imposed by new land use regulations. See 53 P.S. Sec. 10508(4); App. at 110 (state court interpretation of three-year rule in this case).[7]
 
 
 53
 Given this regulatory framework, Pace could have had a reasonable expectation of recouping its $142,000 investment in accordance with its original plan only through its 1978 submission. That submission, however, was considered by the Board of Supervisors under the original ordinance and was unaffected by the 1979 rezoning. Once the Township modified its zoning ordinance in 1979, Pace became subject to the amendments with respect to any plans Pace submitted after the date of enactment because Pace's preliminary plans gained approval over three years prior to March, 1979. Pennsylvania law had allowed Pace a three-year period for fulfillment of its original expectations. The rezoning thus came at a time when Pace could no longer have had reasonable expectations that rezoning would not interfere with its $142,000 investment.
 
 
 54
 As we have earlier noted, local governments have a legitimate interest in controlling growth on a continuing basis. Rogin, 616 F.2d at 689. The possibility that Pace would have to alter its plans to conform to changes in the zoning ordinance in the event it did not complete its project within the reasonable period provided by Pennsylvania law should have been part of Pace's reasonable expectations.
 
 
 55
 Because Pace's complaint alleges neither physical invasion of its property nor interference with reasonable, distinct, investment-backed expectations and because the diminution in value pled is insufficient to support a finding that the rezoning effected a taking, Pace fails to state a taking claim upon which relief can be granted.
 
 IV.
 
 56
 We also find that the complaint does not allege a substantive due process violation. We conclude at the outset that the district court erred in holding that it was bound to find a denial of substantive due process once the Commonwealth Court termed the Township's rezoning "arbitrary and unjustifiably discriminatory." The issue before that court and the substantive due process issue presented to the district court by Pace's complaint are simply not the same issue. This is apparent from the opinion of the Commonwealth Court from which we have earlier quoted at some length to illustrate this point. The governing rule of law taken by that court from the Commercial Properties case bears no resemblence to any aspect of federal substantive due process law and the reasoning of that court reflects a far more active scrutiny of the Township's actions than would be appropriate in federal substantive due process analysis.
 
 
 57
 The Fifth Circuit Court of Appeals has described accurately the narrow review that is proper for a courts' scrutiny of zoning ordinances and their compliance with federal substantive due process standards:
 
 
 58
 Given the legislative or quasi-legislative nature of zoning decisions, their review by federal courts is quite different from the review to which they may be subjected by state courts. See, e.g., Fleming v. City of Tacoma, 81 Wash.2d 292, 502 P.2d 327 (1972) (rezoning amendments are subject to review under Washington "appearance of fairness" doctrine). It is also very different from the review of certain federal administrative actions, where, by statute, a decision must be overturned if not supported by "substantial evidence" on the record. See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983). Unlike such schemes for administrative review, federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for "irrationality" or "arbitrariness," is proper only if the governmental body could have had no legitimate reason for its decision. See, e.g., Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981); Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).
 
 
 59
 Shelton v. City of College Station, 780 F.2d 475, 482-83 (5th Cir.1986) (en banc) (emphasis supplied), cert. denied, --- U.S. ----, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) and, --- U.S. ----, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). See also Kaplan v. Clear Lake City Water Auth., 794 F.2d 1059 (5th Cir.1986). As we stated in Rogin:
 
 
 60
 The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest. "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."616 F.2d at 689 (quoting Williamson v. Lee Optical Co., 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955)).
 
 
 61
 The federal courts largely defer to legislative judgment on such matters as zoning regulation "because of the recognition that the process of democratic political decisionmaking often entails the accomodation of competing interests, and thus necessarily produces laws that burden some groups and not others." Id. at 687. This court will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decisionmaking unless the local legislative judgment is without a plausible rational basis.
 
 
 62
 Our very limited federal review differs markedly from the test employed in this case by the Commonwealth Court, which found that the Township had not carried a burden of producing evidence that demonstrated a substantial relationship between its action and the public interest. We must look instead to whether, given the facts alleged in the amended complaint, the Township could have had a legitimate reason for its decision. When we examine that pleading, including its allegations concerning the Township's reasons for its actions, we find nothing to suggest that the Township's removal of Pace's 37 acres from the industrial classification was anything other than a land use planning decision about which reasonable minds might differ.
 
 
 63
 A plaintiff making a substantive due process claim in federal court has the burden of showing that the regulation is arbitrary or irrational. Usury v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Thus to state a claim. Pace's complaint would have to allege facts that would support a finding of arbitrary or irrational legislative action by the Township. See Friedman v. Village of Skokie, 763 F.2d 236, 239 (7th Cir.1985). As earlier noted, it is well settled in this Circuit that conclusory pleadings do not suffice to state a claim under 42 U.S.C. Sec. 1983 such as the present one. See, e.g., Rotolo v. Borough of Charleroi, 532 F.2d 920 (3d Cir.1976); Boykins v. Ambridge Area School Dist., 621 F.2d 75 (3d Cir.1980). Pace's complaint fails to make any factual allegations that indicate irrationality. The complaint's only relevant factual assertion is that the zoning changes "did not conform to the spirit and general guidelines of the comprehensive plan which encouraged industrial development," App. at 12. This shows only a change of legislative position, not irrationality.[8] As we have noted, Pace does not present a case involving actions aimed at this developer for reasons unrelated to land use planning. Rather, the case involves a difference of opinion on how much industrial development is in the best interest of the Township and how that quantum of industrial development should be achieved.
 
 
 64
 Pace's own allegations provide a legitimate justification for all the contested actions--the rezoning, the water supply standards, the other environmental impact standards, and the special exception procedure. The complaint states that the Township acted to curb industrial development within the Township. One can easily articulate a rational connection between each of the Township's actions and this legitimate purpose. Indeed, the Township provided such an articulation in its detailed letter to the York County Planning Commission dated January 29, 1979, over a month before the zoning amendments were adopted. That letter described the primary purposes of the amendments, including the reduction of the amount of land zoned industrial, as follows:
 
 
 65
 In analyzing what changes, if any, should be made in the Township Zoning Ordinance, the Planning Commission first considered the goals and needs of the Township and the existing ordinance to see how those goals and needs were fulfilled by that ordinance.
 
 
 66
 Upon making this analysis, the first thing which became obvious was that although the Township desired to conserve its highly productive soils in agricultural use feeling that its quality agricultural land represented an important natural resource, it had zoned a great deal of its best agricultural land for development use. In fact, almost all of the land zoned by the present ordinance for development purposes was in the Shrewsbury-New Freedom area where the Township's best soils are located rather than in the Glen Rock area where the land quality is poorer. The Planning Commission also noted that it had zoned a great deal of land for industrial development in relationship to the amount of industry it could absorb and still retain its status as an agricultural community....
 
 
 67
 * * *
 
 
 68
 * * *
 
 
 69
 Because the industrial zone seems excessive in size in relationship to anticipated township industrial requirements, it was reduced in size. Also, there was a real concern for the impact full development of the lands zoned industrial under the current ordinance would have on the village of Tolna and surrounding areas both from a traffic standpoint and from a flooding standpoint.
 
 
 70
 App. at 69-70. Reduction of the amount of land zoned industrial and standards and procedures that allow the Township to closely monitor any industrial development that does occur are measures rationally related to the goal of restricting industrial presence in the Township for the benefit of the general welfare.
 
 
 71
 We find this case remarkably similar to the situation which confronted the Count of Appeals for the First Circuit in Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.1982), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). The plaintiffs there complained that the town had violated due process when it misapplied state law in order to protect "the town's basic character" and, as a result, frustrated the plaintiffs' development plans. The court's response is equally appropriate here:
 
 
 72
 Here it is merely indicated that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws....
 
 
 73
 * * *
 
 
 74
 * * *
 
 
 75
 Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiff's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. The authority cited by [plaintiff], as well as other cases, all suggest that the conventional planning dispute--at least when not tainted with fundamental procedural irregularity, racial animus, or the like--which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not ... sit as a zoning board of appeals." Village of Belle Terre v. Boraas, 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting)....
 
 
 76
 680 F.2d at 832-33.
 
 
 77
 Because it appears on the face of the amended complaint that the Township decisionmakers could have had rational reasons for the decisions contested here and because that complaint alleges no facts suggesting arbitrariness, it fails to state a substantive due process claim upon which relief can be granted. Rogin v. Bensalem Township, 616 F.2d 680 (3d Cir.1980), cert. denied, 450 U.S. 1029 [101 S.Ct. 1737, 68 L.Ed.2d 223] (1981).
 
 V.
 
 78
 Pace's complaint reflects a dispute over legislative judgment on issues of land use planning. Under the due process clause, we defer to legislative judgment unless it can have no rational, legitimate foundation. Pace affirmatively alleges a legitimate basis for the actions of the Township and suggests nothing tending to show that they were arbitrary or capricious. Moreover, Pace's complaint does not allege sufficient interference with its property rights for us to conclude that the Township's actions effected a taking. Accordingly, we will affirm the district court's dismissal of Pace's complaint.
 
 
 
 *
 Honorable Arlin M. Adams, United States Circuit Judge, was present at oral argument but did not participate in the decision
 
 
 **
 Honorable Robert E. Cowen, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 At oral argument, Pace's counsel asserted that the wife of one of the members of the Planning Commission owned an interest in property affected by the 1979 amendments. We find no such allegation in the complaint, much less an allegation that this property was treated differently than other similarly situated properties
 
 
 [2]
 It is apparent from Pace's own allegations that its property has greatly appreciated in value over the last 20 years. Some of this appreciation has undoubtedly come from the fact that the Township is a more desirable place to live than it would have been without any development control. In addition, some of this appreciation has undoubtedly come from the fact that the Township land available for industrial development has been limited by Township zoning. Indeed, Pace's amended complaint alleges that at "all times relevant [Pace] had the only subdivided industrial park in the Township capable of immediate and future development." App. at 9
 
 
 [3]
 Indeed, Pace's Second Count alleges that the zoning ordinance amendments were designed to prevent Pace from "exercising an economically viable use," not all economically visable uses, of its property. App. at 15 (emphasis supplied)
 
 
 [4]
 The Township's brief asserts, without contradiction, that this land has been farmed since purchased by Pace. It also notes that "agricultural" zoning allows some specified industrial uses. The rezoned value of $1,400 per acre compares favorably with Pace's original $515.07 per acre investment
 
 
 [5]
 Pace does allege that it cannot presently "readily market" the industrial lots because the "economy has changed in the vicinity" and because of competition from industrial developments in other municipalities, but this allegation is irrelevant to an analysis of whether the rezoning of the 37 acres constituted a taking
 
 
 [6]
 Because Pace does not allege a diminution in the value of its entire industrial park, we need not address the difficult issue of whether the taking analysis in a case of this kind should focus on the value of the rezoned land only or on the value of all land in the park. Compare American Sav. & Loan Ass'n v. County of Marin, 653 F.2d 364 (9th Cir.1981) with Jentgen v. United States, 657 U.S. 1210 (Ct.Cl.1981) and Deltona Corp. v. United States, 657 F.2d 1184 (Ct.Cl.1981), cert. denied, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982)
 
 
 [7]
 In 1982, the legislature extended the sheltered time period to five years. 53 P.S. Sec. 10508(4)
 
 
 [8]
 If Pace had pled the fact, relied on in its brief, that the zoning changes diminished the total acreage zoned agricultural, this too would not indicate that the Township acted without any plausible and legitimate rational basis. As Pace itself alleges, one of the purposes of the changes was to curb industrial development. The fact that the effect of the changes was a net decrease of a few acres in the total acreage zoned agricultural is not inconsistent with the objective