JOHN E. LONG, INC., a New Jersey Corporation, and John E. Long, individually, Plaintiffs,

. v.

THE BOROUGH OF RINGWOOD, Defendant.

No. CIV.A.96–5318 (MTB).

United States District Court, D. New Jersey.

Aug. 14, 1998.

Ernest J. Nuzzo, Mahwah, NJ, for Plaintiffs.

Richard J. Clemack, Bloomingdale, NJ, for Defendant.

## OPINION

CHESLER, United States Magistrate Judge.

### I. INTRODUCTION

This matter comes before the Court on the motion of Defendant, the Borough of Ringwood, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant requests dismissal of all counts in Plaintiffs' Complaint. The parties consented to having the matter resolved by the undersigned, *see* 28 U.S.C. § 636(c), and an Order of Reference was entered by the Honorable Maryanne Trump Barry, U.S.D.J., on December 3, 1997.[1] Oral argument was heard on May 26, 1998. For the reasons stated below, Defendant's motion for summary judgment will be granted in its entirety.

### II. BACKGROUND

On November 8, 1991, John E. Long, Inc., John E. Long (together "Plaintiffs"), and Colonial Custom Homes, Inc. ("Colonial") purchased a tract of land in the Borough of Ringwood, New Jersey, designated on the official municipal tax map as Block 751, Lots 4, 5, and 6 (the "Property"). Applications to subdivide the Property were submitted to the Ringwood Planning Board ("Planning Board") and

---

1. Section 636(c) states in relevant part that [u]pon the consent of the parties, a full-time United States magistrate [judge] ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. [ ] Upon entry of judgment in any case referred under ... this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate [judge] in the same manner as an appeal from any other judgment of a district court.
28 U.S.C. § 636(c)(1) and (c)(3).

preliminary and final approval were granted. Subsequent to their subdivision approval, Plaintiffs and Colonial filed re-zoning applications with the Planning Board on February 8, 1993. *See* Forsa Aff. Ex. A. The Owners sought to change the zoning from R–40V Residential to R–40 Residential.[2]

The Borough of Ringwood[3] ("Defendant") has a two step process that must be completed in order to obtain the re-zoning of a piece of land. The first step in the process is to submit an application to the Planning Board which then investigates and conducts hearings on the proposal. *See* Forsa Aff. Ex. B. After completing the investigation and conducting the hearings, the Planning Board makes a non-binding recommendation to the governing body. *See* Forsa Aff. Ex. B. The second step in the process is for the governing body, here the Borough Council, to conduct a de novo hearing to determine whether it will introduce an amendment to the zoning ordinance. *See* Forsa Aff. Ex. B.

Subsequent to the filing of the zone change application, the Planning Board deemed Plaintiffs' submission incomplete. *See* Forsa Aff. ¶ 5(a). By November 30, 1993, Plaintiffs had submitted all of the needed materials to make their application complete and ready for review and on January 3, 1994, the Planning Board deemed the application complete. *See* Forsa Aff. ¶ 5(c) and Ex. D. The Planning Board held work sessions on February 7, 1994, and March 28, 1994, and a public hearing was held on April 25, 1994. *See* Forsa Aff. ¶¶ 5(e), (f) and Ex. E, F, and G. At the April 25, 1994, public meeting, the Planning Board voted not to recommend the zone change to the Borough Council and ordered that a resolution be prepared by the Board's attorney and submitted to

the Board for the May 2, 1994, meeting. The resolution was adopted at the Board's May 2, 1994, meeting.

The re-zoning request was heard at the Borough Council's meeting on October 31, 1994. *See* Forsa Aff. Ex. I. The Council passed a resolution denying the application on November 22, 1994. *See* Forsa Aff. Ex. J. The Council's reasons for denying the application included the lack of expert planning testimony supporting the application, the applicant's sole reliance on the potential benefit that sewering the Property would have on the community as a whole, and the impact that the development would have on drainage, traffic, erosion, school population, and other similar situations. *See* Forsa Aff. Ex. H. Subsequent to the zone change denial, Plaintiffs conveyed their entire interest in the Property to Colonial on June 29, 1995. *See* Forsa Aff. Ex. B.

On November 13, 1996, Plaintiffs John E. Long, Inc., as a corporation, and John E. Long, as an individual, filed this action alleging that Defendant violated their Fifth and Fourteenth Amendment rights by denying them substantive due process. First, Plaintiffs allege that the municipality favored another similarly situated developer, Cheshire Properties, Inc. ("Cheshire"), who was seeking to re-zone a sixty-seven acre parcel of land from R–40V Residential to R–40 Residential. *See* Complaint, Count 1 ¶ 16. Plaintiffs allege that piece of land which Cheshire sought to re-zone was extremely similar to that owned by Plaintiffs. Plaintiffs also allege that Cheshire's almost identical application was approved by the Planning Board because they were a "favored applicant." *Id.* Cheshire's application for re-zoning, however, was withdrawn prior to being heard by

---

**2.** Property located in the R–40V Zone is subject to a minimum lot size of 40,000 square feet but larger lots are required as the property exhibits steeper slopes. *See* Forsa Aff. ¶ 2. Property located in the R–40 Zone is not subject to the larger lot sizes due to steep sloping. *Id.*

**3.** Defendant is a municipal corporation. *See* N.J.S.A. 40:43–1 (West 1991). Although Plaintiffs allege wrongdoing by several municipal officials, the Borough itself is the only named defendant.

the Borough Council. *See* Forsa Aff. ¶¶ 6–10.

Additionally, Plaintiffs allege that certain Borough officials were biased against them and that this bias led to the deprivation of their constitutional rights to substantive due process. *See* Long Dep. 31:12–15. First, Plaintiffs allege that the Planning Board chairman, Mr. Van Weezel ("Van Weezel"), was hostile towards him in that he continuously interrupted Mr. Long with technical questions while Mr. Long was testifying at the Planning Board meeting. *Id.* at 31:22–25; 32:1–10; 37:16–20. A second instance of alleged bias occurred when a borough resident, Pat Wallace, was told by a member of the Planning Board that Plaintiffs' application for a zoning change was proceeding with no problems until Long "pissed off Van Weezel." *Id.* 38:1–14. Finally, Plaintiffs allege that the Planning Board's consultant, Dr. Harvey Moskowitz, was "pre-programmed by the board" against Plaintiffs and that he was closed minded in his analysis of, and his position on, the application. *Id.* 46:5–7; 48:19–25.

Plaintiffs' Complaint also alleges that the above actions by the Borough and its officials constituted "an unlawful taking and destruction of Plaintiffs' rights and interests in real estate without legal authority or probable cause." *See* Complaint, Count Two ¶ 2. Finally, Plaintiffs allege that their constitutional right to procedural due process was infringed upon by the Defendants. *Id.* Fourth Count ¶¶ 2, 3. Specifically, Plaintiffs' claim that the above actions of the Borough and its officials deprived them of an impartial and fair tribunal with regard to their re-zoning hearings. *Id.* ¶ 2. Plaintiffs argue that the above mentioned conduct constituted a continuous pattern and practice of civil rights violations. *Id.* First Count, ¶ 24. Accordingly, Plaintiffs argue that Defendant is liable to them for damages pursuant to 42 U.S.C. § 1983. *Id.* ¶ 23.

## III. DISCUSSION

Defendant moves for summary judgment and requests that Plaintiffs' Complaint be dismissed with prejudice. Defendant contends that because Plaintiffs failed to establish that any municipal official acted with bias or in a discriminatory manner that their Complaint cannot stand. Additionally, Defendant contends that because the Borough Council never took any action on the "favored" applicant's re-zoning proposal, they could not have discriminated against Plaintiffs. Plaintiffs oppose the motion and argue that their constitutional rights in the property at issue were violated and that the proceedings with the Planning Board and Borough Council were rife with conflicts of interest. Each argument will be discussed in turn.

### A. Summary Judgment

The Court may grant summary judgment when, drawing all inferences in favor of the non-moving party, the pleadings, supporting papers, affidavits, and admissions on file, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 536 n. 3 (3d Cir.1994); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The Court's function is not to weigh the evidence and discern the truth of the matter, but to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Petruzzi's IGA v. Darling–Delaware,* 998 F.2d 1224, 1230 (3d Cir.), *cert. denied,* 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Miller v. Indiana Hospital,* 843 F.2d 139, 143 (3d

Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). A fact is material if it influences the outcome of the action under the governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the burden of establishing that there are no genuine issues of material fact for trial regardless of who bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, as Plaintiffs do here, the moving party may satisfy its burden in a motion for summary judgment by showing that the non-moving party has failed to adduce evidence sufficient to establish an essential element that the non-movant would have to prove at trial. *Id.*

Once that burden is met, the non-moving party "may not rest upon the mere allegations" of its complaint to raise a genuine issue of fact, but must submit evidence specifically showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Robin Const. Co. v. United States,* 345 F.2d 610, 614–15 (3d Cir.1965). If the party opposing the motion fails to do so, the "factual record will be taken as presented by the moving party and judgment will be entered as a matter of law." *United States v. City of Hoboken,* 675 F.Supp. 189, 192 (D.N.J.1987).

If the Court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, then summary judgment may be granted.

## B. Procedural Due Process

Plaintiffs allege that they were not provided with an impartial and fair tribunal when proceeding before the Planning Board and the Borough Council. *See* Complaint, Fourth Count ¶ 2. Accordingly, Plaintiffs claim that their constitutional right to procedural due process under the Fourteenth Amendment to the Constitution were violated and that this violation is actionable under 42 U.S.C. § 1983.[4]

In order to establish a violation of procedural due process rights under the Fourteenth Amendment, a plaintiff, in addition to proving that a person acting under color of state law deprived it of a protected property interest,[5] must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981); *DeBlasio v. Zoning Bd. of Adjustment for the Township of W. Amwell,* 53 F.3d 592, 569–97 (3d Cir.), *cert. denied,* 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995); *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 680 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992); *Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107, *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Rogin v. Bensalem Township,* 616 F.2d 680, 694 (3d Cir.1980), *cert. denied sub nom. Mark–*

---

4. The statute states in relevant part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial

officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

5. Ownership of real property is a protected property interest for procedural due process purposes. *See Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679, (3d Cir. 1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

*Garner Assocs., Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). As the Third Circuit has previously stated, a state furnishes constitutionally adequate procedural due process when it provides reasonable remedies to correct a legal error by a local administrative body. *Bello,* 840 F.2d at 1128; *Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Accordingly, when a state affords a full judicial process in which a party may challenge the administrative decision in question, the state has provided adequate procedural due process whether or not the aggrieved party has availed itself of the provided appeal process. *DeBlasio,* 53 F.3d at 597; *Midnight Sessions,* 945 F.2d at 682.

■ The State of New Jersey provides a full judicial mechanism for challenging adverse zoning decisions. *DeBlasio,* 53 F.3d at 597; *see also Rogin,* 616 F.2d at 694–95 (upholding Pennsylvania's process for challenging zoning ordinances). As noted in *DeBlasio,* New Jersey statutes provide that a Zoning Board of Adjustment ("ZBA") has the power to decide appeals of the zoning officer's enforcement of a municipality's zoning ordinance and to decide requests for an interpretation of the zoning law. *See* N.J.S.A. 40:55D–70(a) and (b) (West Supp.1998). Additionally, the ZBA has the power to grant a request for a variance or other relief so long as it is not a substantial detriment to the public good and it will not substantially impair the intent and purpose of the zoning ordinance. *Id.* 40:55D–70(c) and (d).

Moreover, New Jersey allows any interested party affected by any decision of an administrative officer of the municipality based upon or made in the enforcement of the zoning ordinances or official map to make an appeal to the ZBA. *Id.* 40:55D–72(a). Finally, pursuant to Rule 4:69–1 *et seq.* of the New Jersey Court Rules, Plaintiffs were entitled to a review, a hearing, and relief by filing a complaint in the New Jersey Superior Court, Law Division, before the expiration of forty-five days from the time Plaintiffs received notice that their application for rezoning had been denied. *R.* 4:69–1 *et seq.* This process is clearly a constitutionally adequate procedure. *See DeBlasio,* 53 F.3d at 597–98. Accordingly, Plaintiffs cannot maintain a procedural dues process claim.

**C. Substantive Due Process**

■ Plaintiffs also allege that the decisions of the Planning Board and Borough Council limiting the intended land use applied for were arbitrarily and irrationally reached. *See* Complaint, First Count ¶ 13. Additionally, Plaintiffs claim that the inappropriate and baseless animus portrayed by municipal officials with regards to the re-zoning applications materially affected the decisions of the Planning Board and Borough Council which in turn destroyed Plaintiffs' financial interest in the Property. *Id.* Accordingly, Plaintiffs argue that their constitutional rights to substantive due process were infringed upon and that this violation is actionable under 42 U.S.C. § 1983.[6]

---

6. Unlike property rights for procedural due process purposes, which are created by state law, substantive due process rights are created by the Constitution. *Reich v. Beharry,* 883 F.2d 239, 244, (3d Cir.1989). To state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest. *Acierno v. Cloutier,* 40 F.3d 597, 600 (3d Cir.1994). When complaining of a substantive due process violation, the plaintiff must prove that the governmental authori-

ty infringed a property interest encompassed by the Fourteenth Amendment. *Id.* at 616. Thus, "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached." *DeBlasio,* 53 F.3d at 601. "Where the plaintiff so alleges, the plaintiff has, as a matter of law,

### 1. Standard

■ In order for a plaintiff to prevail on a substantive due process claim, he or she must prove that the governmental authority acted in such a way as to infringe a property interest encompassed by the Fourteenth Amendment. *Sameric Corp., Inc. v. Philadelphia,* 142 F.3d 582, 590 (3d Cir.1998); *DeBlasio,* 53 F.3d at 600; *Acierno v. Cloutier,* 40 F.3d 597, 616 (3d Cir.1994); *Taylor Inv., Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1290 (3d Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); *Midnight Sessions,* 945 F.2d at 679. A violation of substantive due process rights is demonstrated if the government's actions were not rationally related to a legitimate state interest or were motivated by bias, bad faith, or improper motive. *Sameric,* 142 F.3d at 590; *Independent Enter., Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1179 (3d Cir.1997); *Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 692 (3d Cir.1993); *Midnight Sessions,* 945 F.2d at 683.

In order to survive a motion for summary judgment on a substantive due process claim, a plaintiff must present sufficient evidence from which a fact-finder could reasonably conclude that the defendants committed an arbitrary and capricious government action and that it was motivated by bias, bad faith, or improper motive. *Sameric,* 142 F.3d at 590; *Independent Enter., Inc.,* 103 F.3d at 1179; *DeBlasio,* 53 F.3d at 600; *Parkway Garage,* 5 F.3d at 692; *Midnight Sessions,* 945 F.2d at 683; *Neiderhiser v. Borough of Berwick,* 840 F.2d 213 (3d Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). Failing to provide the requisite amount of proof will ensure the dismissal of the plaintiff's complaint through summary judgment.

impliedly established possession of a property interest worthy of substantive due process

### 2. Sufficiency of Evidence

Plaintiffs allege that Defendant denied its application to re-zone the Property because the Planning Board, the Borough Council, and individual members of both boards harbored a certain bias against Plaintiffs. First, Plaintiffs allege that the Planning Board chairman, Mr. Van Weezel, was hostile towards him in that he continuously interrupted Mr. Long with technical questions while Mr. Long was testifying at the Planning Board meeting. *Id.* at 31:22–25; 32:1–10; 37:16–20. A second instance of alleged bias occurred when Pat Wallace was told by a member of the Planning Board that Plaintiffs' application for a zoning change was proceeding with no problems until Long "pissed off Van Weezel." *Id.* 38:1–14. Finally, Plaintiffs allege that the Planning Board's consultant, Dr. Harvey Moskowitz, was "preprogrammed by the board" against Plaintiffs and that he was closed minded in his analysis of, and his position on, the application. *Id.* 46:5–7; 48:19–25. Plaintiffs contend that this bias is all centered around Defendant's strong aversion to allowing new homes to hook up to the municipality's sewer system. Long Cert. ¶ 17.

### a. Background Cases on Quantity of Evidence

The Third Circuit has issued several decisions dealing with substantive due process violations in the land use context and the amount of proof required to establish such claims. *See, e.g., Sameric,* 142 F.3d at 589–90; *DeBlasio,* 53 F.3d at 594–96; *Bello,* 840 F.2d at 1126–27. For example, in *Bello,* the plaintiff obtained subdivision approval from the municipality to develop the subject property in five different stages. 840 F.2d at 1126. After completing stage one, the plaintiffs applied for a permit to begin work on phase five. *Id.* The local enforcement officer denied the plaintiffs' application based upon the plain-

protection." *Id.*

tiffs' failure to complete phases two, three, and four before beginning work on phase five. *Id.* Because they allegedly had never agreed to develop the land in the order suggested by the phases, the plaintiff filed suit in state court seeking a writ of mandamus. *Id.* Approximately two years after the plaintiffs filed suit in state court, the municipality was ordered to issue the requested permits. *Id.*

During the pendency of the state court action, the plaintiffs filed a suit, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Western District of Pennsylvania essentially alleging that several municipal officials improperly influenced the decision to deny the issuance of the requested building permits. *Id.* at 1126–27. The plaintiffs alleged that the actions of these officials deprived them of, *inter alia,* their constitutional rights to due process and equal protection. *Id.* at 1127. The defendants moved for summary judgment and the district court granted their motion and dismissed the plaintiffs' complaint. *Id.*

The Third Circuit, however, reversed and stated that a sufficient amount of evidence of bias or improper motive had been submitted to the district court so as to preclude summary judgment. *Id.* at 1127–30. The plaintiffs claimed that they were denied the phase five permit because one of the plaintiff's employees had unsuccessfully challenged a present council member in the most recent municipal election. *Id.* at 1127. The plaintiff, in an affidavit, contended that the member of the council pressured the municipal enforcement officer into denying permits as long as the employee who had sought a council seat was still employed by the plaintiff. *Id.* The Third Circuit held that sufficient evidence of partisan political interference in the town's land use process that was entirely unrelated to the merits of the permit application had been submitted to the district court. *Id.* at 1128–30. Accordingly, the circuit court reversed the grant of summary judgment. *Id.* at 1131.

Additionally, in *DeBlasio,* the plaintiff was seeking to obtain a variance from the municipal zoning board of adjustment (the "ZBA"). *DeBlasio,* 53 F.3d at 595–96. The plaintiff, the owner of a tract of land with a Quonset hut on it, leased his residentially zoned property in West Amwell Township, New Jersey, to Peter Holmes in 1979 for a commercial use. *Id.* at 594. West Amwell had enacted a zoning ordinance in the mid–1960s that classified the future DeBlasio property for residential use only. *Id.* Because a business had been operating from the property at the time of the zoning change, the owner received an exemption as a pre-existing nonconforming use. *Id.*

At the time of the events in the *DeBlasio* case, the secretary of the ZBA was Werner Hoff. *Id.* Werner's son, John Hoff, was running a business in a different part of town on a piece of land that also contained a Quonset hut. *Id.* at 594–95. John Hoff's business was experiencing severe financial difficulties. *Id.* at 595. Werner, and his son Werner Hoff, Jr., loaned John money in exchange for a mortgage on the property. *Id.*

At the same point in time, Werner had a brief encounter with Peter Holmes. *Id.* According to Holmes, Werner told him that he should consider purchasing or renting John's property because the zoning problems he was experiencing on the DeBlasio tract did not exist there. *Id.* Holmes did not pursue Werner's offer and Werner did not discuss the subject with Holmes at any other time. *Id.*

In 1989, a citizen complaint was filed with the municipality regarding the business that was housed on the DeBlasio property. *Id.* The township's zoning official inspected the property and concluded that Holmes's business constituted an expansion of the pre-existing nonconforming use and the operation was, therefore, in violation of the zoning ordinance. *Id.* In response, the plaintiff appealed the zoning official's decision and applied for a vari-

ance with the ZBA. *Id.* The ZBA considered the plaintiff's requests in a meeting that Werner excused himself from. *Id.* The matter was subsequently dismissed due to a technical problem in the zoning official's findings. *Id.*

New complaints of zoning violations were lodged against Holmes and DeBlasio in 1990. *Id.* Again, the plaintiff filed an appeal of the zoning officer's findings and an application for a variance. *Id.* at 595–96. The ZBA conducted a hearing concerning the DeBlasio property in September of 1990. *Id.* at 596. The ZBA concluded that the plaintiff was in violation of the zoning ordinance; they denied his request for a variance, and required Holmes to vacate the property within six months. *Id.* Werner, believing that a conflict on interest no longer existed because Werner Hoff, Jr. had purchased John's property, participated in this hearing. *Id.*

In response to the ZBA's actions, plaintiff filed a lawsuit alleging, *inter alia,* that his Fourteenth Amendment rights to substantive due process had been violated. *Id.* at 596. The district court granted summary judgment in favor of the defendants stating that the plaintiffs claims did not rise to the level of constitutional violations. *Id.* The circuit court, however, disagreed and concluded that a genuine issue of material fact must be resolved to determine whether or not Werner, for personal reasons, improperly interfered with the process by which the ZBA rendered zoning decisions. *Id.* at 601. Because one of his sons still owned the property and the property remained unoccupied, the Third Circuit concluded that Werner may have had a financial interest in the outcome of an application for a variance. *Id.* Accordingly, the circuit reversed the district court's grant of summary judgment. *Id.* at 608–09.

Finally, in *Sameric,* the plaintiff, owner of the Boyd Theater located in Philadelphia, Pennsylvania, intended on demolishing the building on his property and develop the site along with adjacent properties

that it owned. *Sameric,* 142 F.3d at 586–87. The Philadelphia Historical Commission, however, notified the plaintiff that it had designated the Boyd Theater as a historical building. *Id.* at 586. As a result, the plaintiff could not alter, renovate, modify, or demolish the interior or exterior of the theater without the prior approval and supervision of the Commission. *Id.* at 586–87. After being denied the proper permits and filing proceedings in Pennsylvania state court, the plaintiff filed a § 1983 action against the city and various individual defendants, alleging that the city had violated its federal and state constitutional rights by designating the theater as a historic building and denying the demolition permits. *Id.* at 589. The district court granted the defendants' motion for summary judgment and dismissed the plaintiff's complaint. *Id.*

The plaintiff appealed the district court's decision to the United States Court of Appeals for the Third Circuit. *Id.* In an opinion written by Judge Greenberg, the court held that the allegations made by the plaintiff were insufficient to make out a substantive due process claim. *Id.* at 594, 596. Additionally, the court noted that the plaintiff had failed to provide any claim that the defendants had acted for reasons unrelated to land use planning. *Id.* at 595. The court stated that the plaintiff merely presented "a claim in the nature of an average dispute between a property owner and local zoning officials" and, therefore, they were reluctant "to substitute [their] judgment for that of local decision-makers, particularly in matters of such local concern as land use planning, absent a local decision void of a 'plausible rational basis.'" *Id.* at 596; *see also Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035 (3d Cir.), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375, *reh'g denied,* 483 U.S. 1040, 108 S.Ct. 10, 97 L.Ed.2d 800 (1987); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Be-

cause the plaintiff's allegations did not reach to the level of a constitutional violation, the circuit court affirmed the district court's grant of summary judgment. *Id.* at 601.

### b. Quantity of Evidence Required

■ The Third Circuit's prior case law sets a clear standard by which courts are to consider any substantive due process claims made by a landowner against the zoning authority of a municipality.[7] The alleged arbitrary and capricious action by a government official must reach a significantly high level and must have either been prompted by bias, bad faith, or improper motive or not been rationally related to a legitimate state interest. *See Sameric,* 142 F.3d at 590; *Parkway Garage,* 5 F.3d at 692; *Midnight Sessions,* 945 F.2d at 683. Only then will it constitute a substantive due process violation.

■ Thus, even where the rationale behind a zoning decision is not legislatively sanctioned, if it nevertheless is rationally related to land use concerns, it will not be "arbitrary and capricious" for the purposes of establishing a substantive due process claim. *See, e.g., Sameric,* 142 F.3d at 595–96. If the government officials had a legitimate reason for their decision, albeit not one properly considered for the purposes of zoning, then their actions are not considered arbitrary or irrational. *Id.* at 594–96. Therefore, these cases suggest that in order to prove that a zoning official or board's actions were improperly motivated, the activities by the officials must reach an extreme level of partisan political considerations, personal conflicts of interest and gain, or invidious discriminatory intent. *Compare DeBlasio,* 53 F.3d at 594–96 (personal conflict of zoning board member); *Parkway Garage,* 5 F.3d at 697 (city seeking to advance a direct economic gain

is an improper motive for zoning decisions); *and Bello,* 840 F.2d at 1126–27 (partisan political influence is an improper motive for zoning decisions), *with Sameric,* 142 F.3d at 594 (historical commission's decision relying upon procuring live performances did not constitute a substantive due process violation). Without this level of arbitrary and capricious action by the government officials, a plaintiff will not be able to maintain a due process claim.

### c. Quantity of Evidence Provided

Plaintiffs submit evidence in three different areas of alleged wrongdoing. First, Plaintiffs claim that a favored and "blessed" developer who was similarly situated received preferential treatment and obtained the exact zoning approval initially sought by Plaintiffs. In both the Complaint and in his deposition, Long alleged that Cheshire Builders, the owners of the similar property, received expeditious approval for the same re-zoning unsuccessfully sought by Plaintiffs. *See* Complaint ¶ 16; Long Dep. 26:19–25; 27–1–5. Plaintiffs claim that this "most favored son" developer devised a subdivision plan that made use of an existing sewer line instead of calling for new lines to be installed. Plaintiffs argue that his re-zoning request was denied because his subdivision plan called for new sewer lines to be installed.

According to Plaintiffs, the word "sewer" in Ringwood is a swear word and any re-zoning plan that calls for sewer lines to be added will have a difficult time in obtaining approval. Plaintiffs contend that this bias towards sewers is a result of the *Mt. Laurel* decisions of the New Jersey Supreme Court. *See Southern Burlington County NAACP v. Mt. Laurel Township,* 67 N.J. 151, 336 A.2d 713 (1975), *cert. denied,* 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); *Southern Burlington*

---

7. Defendant cites to *Rivkin v. Dover Township Rent Leveling Bd.,* 143 N.J. 352, 671 A.2d 567 (1996), as controlling law on the issue of substantive due process. While the New Jersey Supreme Court's opinion can be persua-sive authority on this federal constitutional issue, this Court is bound by the precedent of the United States Court of Appeals for the Third Circuit.

*County NAACP v. Mt. Laurel Township,* 92 N.J. 158, 456 A.2d 390 (1983). Plaintiffs argue that by allowing additional sewer lines, the municipality would be required to allow more *"Mt. Laurel* housing" as their "fair share" responsibility would increase. Plaintiffs contend that they were discriminated against because their land was allegedly not re-zoned solely because they sought to add additional sewer lines while the "favored son's" land, which also included plans for sewers, was recommended for re-zoning despite the decades of animus towards sewers.

The second area of wrongdoing that Plaintiffs point to is the claims of bias against the Planning Board Chairman. Plaintiffs allege that the Planning Board chairman, Mr. Van Weezel, was hostile towards him in that he continuously interrupted Mr. Long with technical questions while Mr. Long was testifying at the Planning Board meeting. *Id.* at 31:22–25; 32:1–10; 37:16–20. Plaintiffs claim that the continuous interruptions and the technical questions being thrown at Long amount to hostility on the part of Van Weezel. This hostility, according to Plaintiffs, is evidence of bias by local officials against Plaintiffs.

A final area of wrongdoing alleged by Plaintiffs is the bias of the Planning Board consultant. Plaintiffs alleged that the Planning Board's consultant, Dr. Harvey Moskowitz, was "preprogrammed by the board" against Plaintiffs and that he was closed minded in his analysis of, and his position on, the application. *Id.* 46:5–7; 48:19–25. Plaintiffs argue that Moskowitz's behavior towards them amounts to nothing less than discriminatory bias.

### d. Sufficiency of Evidence Provided

Citing primarily the conduct of the planning board chairman, the planning board's consultant, and the municipality's general distaste for any building project that contains a request for sewer hookup, Plaintiffs contend that they have produced evidence that creates a genuine issue of material fact regarding the improper motivation of Defendant in denying Plaintiffs' application. Unfortunately, the Court cannot agree that the evidence presented creates a violation of substantive due process rights.

First, Plaintiff failed to submit any evidence, besides his mere allegations and conclusions, which show that Defendant had a bias against any zoning request that involved sewers. In fact, the only statements that Plaintiff does submit with regards to sewers is that the town is biased against them because they would create a larger "fair share" under *Mt. Laurel* and that another developer was granted a similar re-zoning application because he was a "favored son" of the town. Neither argument is persuasive or even supported. The governing body of the Borough never considered the implementation of the "favored son's" application and, while sewers may not be a valid zoning consideration, it is not so unrelated to land use planning as to trigger a substantive due process claim. *See Sameric,* 142 F.3d at 594.

Second, none of the alleged activities of any of the municipal officials in the case at bar even approaches the level of partisan political considerations, personal conflicts and gain, or invidious discriminatory intent that were present in the *Bello* and *DeBlasio* cases. While the alleged comments and actions of the Planning Board and Borough Council members may perhaps be characterized as discourteous, rude, and abrasive, they cannot be characterized as discriminatory or violative of one's constitutional rights.

Third, the allegations concerning Dr. Moskowitz's analysis merely demonstrate that Plaintiff vehemently disagrees with the conclusions and believes that it is inconsistent with the analysis that Dr. Moskowitz prepared for the "favored son" developer. Bias is not evidenced merely because Plaintiff believes that, in some respects, Dr. Moskowitz's report concerning his property was inconsistent with the

consultant's evaluation of the alleged similarly situated developer. While it may very well be that Dr. Moskowitz's evaluation of Cheshire's application was more favorable than Plaintiff's, that does not demonstrate that the analysis of Plaintiff's property was wrong or based on a bias. It is equally possible that Cheshire presented more persuasive expert evidence in support of its application (Plaintiff provided none) or that Dr. Moskowitz was, for some other reason, in favor of Cheshire's application. The Court need not determine whether or not there was a discrepancy in the treatment of the two applicants because a finding that Cheshire might have received inappropriate favorable treatment casts no light on whether Plaintiff was treated improperly.

Additionally, as in the *Sameric* case, the evidence submitted by Plaintiffs here presents a claim that is more analogous to an average dispute between a property owner and the local zoning body. Routine land use decisions should not be "federalized." *Sameric*, 142 F.3d at 596. In land use cases, federal courts should be reluctant to substitute their judgment for that of the local decision-makers unless the local decision is void of a "plausible rational basis." *Id.; Pace*, 808 F.2d at 1035. Accordingly, " 'federal judicial interference with a state zoning board's ... decisions ... is proper only if the governmental body could have had no legitimate reason for its decision.' " *Pace*, 808 F.2d at 1035 (quoting *Shelton v. City of College Station*, 780 F.2d 475, 482–83 (5th Cir.) (en banc), *cert. denied*, 477

U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), *and cert. denied*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986)); *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, *reh'g denied*, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

Plaintiffs fail to argue that there was no rational basis behind the denial of its application for re-zoning. At oral argument, Plaintiffs counsel mentioned that a majority of the property in question was located on a steep incline. Because of the Property's incline, the Planning Board's engineer issued reports outlining several potential and severe problems that could result from allowing the change in zoning and the increase in lot numbers. *See* Forsa Aff. Ex. G. Plaintiffs provided no expert planning testimony in support of their application or to rebut the testimony and reports given by the Planning Board's engineer. *See* Forsa Aff. Ex. G. Without any contrary evidence presented by Plaintiffs, it seems completely rational to this Court for the Planning Board to determine that larger lot sizes are required on this type of land. The Planning Board and Borough Council are the two local bodies who deal with these issues on a constant basis. Therefore, the Court will not substitute its judgment for that of the local decision-makers who are well versed in these matters. Accordingly, Plaintiffs' substantive due process claim will be dismissed.[8]

---

8. Plaintiffs also impliedly make an equal protection claim based upon alleged favored treatment that another builder received from the Defendant. Like their substantive due process claim, however, any equal protection claim made by Plaintiffs cannot stand.

The Fourteenth Amendment to the Constitution provides in relevant part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV; *see also Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, *reh'g denied*, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401, *and reh'g denied*

*sub nom. Texas v. Certain Named & Unnamed Undocumented Alien Children*, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). As a general matter, "economic and social legislation is subject to rational basis review, under which a law need only be 'rationally related to a legitimate state interest.' " *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir.1992), *cert. denied*, 507 U.S. 908, 113 S.Ct. 1252, 122 L.Ed.2d 651 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513,

## D. Takings

Plaintiffs' Complaint also alleges that the actions by the Borough and its officials constituted "an unlawful taking and destruction of Plaintiffs' rights and interests in real estate without legal authority or probable cause." *See* Complaint, Count Two ¶ 2. Accordingly, Plaintiffs claim that their constitutional rights under the Fifth and Fourteenth Amendments were violated and that the violation is actionable under 42 U.S.C. § 1983.

The Fifth Amendment, applicable to state and local governments through the Fourteenth Amendment, provides in relevant part that "private property [shall not] be taken for public use, without just compensation." *See* U.S. Const. amend. V. The amendment does not, however, "prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987). It is designed "not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Id.* at 315, 107 S.Ct. at 2385–86. Furthermore, the amendment does not require that just compensation be paid in advance of or even contemporaneously with the taking. *Williamson County Regional Planning*

*Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). Rather, the existence of a " 'reasonable, certain and adequate provision for obtaining compensation' " at the time of the taking is all that is required. *Blanchette v. Connecticut Gen. Ins. Corp.*, 419 U.S. 102, 125, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.*, 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890)). Thus, "if the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Williamson County*, 473 U.S. at 194–95, 105 S.Ct. at 3121 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1013, 1018 n. 21, 104 S.Ct. 2862, 2878, 2881 n. 21, 81 L.Ed.2d 815 (1984)).

The Third Circuit set forth the factors to be considered in determining whether state action constitutes a taking without just compensation in *Keystone Bituminous Coal Ass'n v. Duncan*, 771 F.2d 707, 715 (3d Cir.1985), *aff'd*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). The *Keystone* court stated that a "taking may more readily be found when the interference with property can be characterized as a physical invasion by government ... than when the interference arises from some public program adjusting the benefits and burdens of economic life to pro-

---

2516–17, 49 L.Ed.2d 511 (1976) (per curiam)); *see also United States v. Williams*, 124 F.3d 411, 422 (3d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 698, 139 L.Ed.2d 642 (1998); *Alexander v. Whitman*, 114 F.3d 1392, 1406–07 (3d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 367, 139 L.Ed.2d 286 (1997); *Tolchin v. Supreme Court of New Jersey*, 111 F.3d 1099, 1113 (3d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997). Where legislation establishes a classification that implicates fundamental rights or draws upon suspect distinctions such as race, religion or alienage, however, the legislation must meet strict scrutiny analysis. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988); *Schumacher*, 965 F.2d at 1266.

Although one does have a fundamental right to acquire and dispose of real property, *see Supreme Court of N.H. v. Piper*, 470 U.S. 274, 281 n. 10, 105 S.Ct. 1272, 1277 n. 10, 84 L.Ed.2d 205 (1985); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 432, 88 S.Ct. 2186, 2199, 20 L.Ed.2d 1189 (1968), a person does not have a fundamental right to use the property or have it zoned any way he or she wishes. Therefore, as long as there is a rational basis for denying Plaintiffs' zone change application, an equal protection claim cannot stand. As this Court has previously noted, there was a rational basis for the Defendant to conclude that a zoning change was either not warranted or was harmful to the community. Accordingly, any claim made by Plaintiffs based on an equal protection violation is groundless.

mote the common good." 771 F.2d at 712 (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978)). An actual physical invasion of the property, however, is not a prerequisite to a taking. *Midnight Sessions*, 945 F.2d at 676; *Pinewood Estates v. Barnegat Township. Leveling Bd.*, 898 F.2d 347, 350–51 (3d Cir.1990). In situations where a state or local government "reasonably conclude[s] that the 'health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land," a taking requiring compensation only takes place when a regulation that "destroyed or adversely affected recognized real property interests" reaches a certain level. *Midnight Sessions*, 945 F.2d at 676; *Keystone*, 771 F.2d at 712–13. In those situations, diminution in the property value is only one component used when determining whether the extent of interference justifies compensation. *Midnight Sessions*, 945 F.2d at 676; *Keystone*, 771 F.2d at 713. A second factor is the extent that the regulation interferes with "reasonable, distinct, investment-backed expectations." *Keystone*, 771 F.2d at 713 (citing *Penn Cent.*, 438 U.S. at 124, 98 S.Ct. at 2659).

A taking is not established merely by a showing of "the denial of 'the ability to exploit a property interest that [the plaintiffs] heretofore had believed was available.'" *Id.* (quoting *Penn Cent.*, 438 U.S. at 130, 98 S.Ct. at 2662) (denial to use air rights to build office tower leaves other reasonable beneficial uses of site and, therefore, there is insufficient interference with investment-backed expectations); *see also deBotton v. Marple Township*, 689 F.Supp. 477, 481 (E.D.Pa.1988) (denial of curative amendment to zoning ordinance to construct mobile home park does not deprive owner of all uses of property because ordinance still permits construction of single family homes). *But see Wheeler v. City of Pleasant Grove*, 664 F.2d 99, 100 (5th Cir.1981), (confiscatory measure of re-voking building permit for apartment complex is a taking), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982).

■ Any temporary taking that denies the landowner all use of his or her property also requires compensation for the time period of the taking, even if the government authority later amends, withdraws, or invalidates the original regulation or action that caused the taking. *First English*, 482 U.S. at 321, 107 S.Ct. at 2389. "Notably, in *First English*, the Court was required by the procedural posture of the case to assume that the ordinance in question denied the landowner all use of its property because the plaintiff had made that allegation and the trial court sustained the defendant's motion to strike." *Midnight Sessions*, 945 F.2d at 676–77. "The Court expressly limited its holding to the peculiar facts in *First English* and noted it did 'not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like'" *Id.* (quoting *First English*, 482 U.S. at 321, 107 S.Ct. at 2389).

The Third Circuit has consistently taken a narrow view of what constitutes a taking of property by regulation. For example, in *Rogin v. Bensalem Township*, 616 F.2d 680, 692 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), the circuit court held that a municipality's amendments to their zoning ordinance, after it approved a developer's building plan for a multi-unit condominium complex, to reduce the permitted units per acre from twelve to four was not a taking because the amendments universally applied to all landowners within the zone and because the value of the affected property was not "reduced drastically." *Id.* The *Rogin* court noted that the Supreme Court's precedents on the change in value allowed a much larger degree of diminution than that presented by the plaintiffs, who claimed a loss of $1,000,000 in value as

a result of the zoning changes. *Id.; see also Midnight Sessions*, 945 F.2d at 677.

Specifically, the *Rogin* court discussed the Supreme Court's decision in *Goldblatt v. Hempstead*, 369 U.S. 590, 592–93, 82 S.Ct. 987, 988–89, 8 L.Ed.2d 130 (1962), in which the Court held that a municipal ordinance that proscribed excavations below the water table and "which prevented the claimant from continuing its 30–year old sand and gravel business was not a taking because it was a valid exercise of the police power and, although the ordinance deprived the property of its most beneficial use, the lot retained value." *Midnight Sessions*, 945 F.2d at 677 (citing *Rogin*, 616 F.2d at 690). In *Rogin*, the Third Circuit noted that the Supreme Court was unwilling to hold general land use regulations invalid "unless application of the law destroys or severely diminishes the value of the property ... even if the legislation prohibits 'a beneficial use to which individual parcels had previously been devoted and thus cause[s] substantial individualized harm.'" *Rogin*, 616 F.2d at 690 (citations omitted).

Additionally, in *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1031 (3d Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375, *reh'g denied*, 483 U.S. 1040, 108 S.Ct. 10, 97 L.Ed.2d 800 (1987), the Third Circuit held that the municipality's "rezoning of an area from industrial to agricultural, which frustrated the plaintiff's plans to construct an industrial park, was not a taking without just compensation because the property retained a substantial value that established the existence of residual economically feasible uses." *Midnight Sessions*, 945 F.2d at 677 (citing *Pace*, 808 F.2d at 1031). The court stated that even though the plaintiff had been denied the best use or uses of the tract of land, they had not been stripped of all economically viable uses of the property. *Pace*, 808 F.2d at 1031.

Finally, the Third Circuit in *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 677–78 (3d Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992), held that the denial of dance hall licenses by the city was not a taking under the Fifth and Fourteenth Amendments. *Id.* The court held that there was no basis to conclude that the alleged diminution in value of the property deprived the plaintiff of all of the economically viable uses of it. *Id.* Accordingly, the court reversed the district court's judgment on this ground. *Id.; see also Goldblatt*, 369 U.S. at 592, 82 S.Ct. at 989; *Penn Cent.*, 438 U.S. at 131, 98 S.Ct. at 2663; *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75 percent diminution in value); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (reduction in value from $800,000 to $60,000).

It is clear after looking at the line of cases discussed above that Plaintiffs' could not and did not establish that the denial of its re-zoning application constituted a taking. The denial of Plaintiffs' application did deprive them of the best and most profitable use of their land. There is no argument as to that fact. The Borough's denial of the application did not, however, deprive Plaintiffs of all economically viable uses of the Property. Plaintiffs were still entitled to go ahead with the subdivision of the land and the building of homes on lots of three acres or more. What they could not do was subdivide the Property and build houses on lots of less than three acres. Therefore, Plaintiffs were certainly left with an economically viable use of their Property. Accordingly, Plaintiffs' cause of action under the Takings Clause of the Fifth Amendment will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment will be granted in its entirety and Plaintiffs' complaint will be dismissed with prejudice. An appropriate order will issue.